# EXHIBIT 2



**Hartford Life**

November 11, 2002

Marilyn Lucey
12 Hudson Place
East Bridgewater, MA  02333

Policy Holder:    Trustees Of The Massachusetts Bankers Association Group Ins
Claimant:       Marilyn Lucey
SSN:           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
Policy Number:  GLT024407

Dear Ms. Lucey:

We are writing to you about your claim for Long-Term Disability (LTD) benefits. These Long Term Disabilty benefits are under the group insurance policy number GLT 24407 for the Trustees of the Massachusetts Banker's Association Group Insurance Trust.

We have completed our review of your claim for benefits and have determined that the evidence in support of your claim does not establish that you continue to meet the definition of Disability. Accordingly, benefits are no longer payable to you beyond 10/31/02 under the terms of the Policy.

Benefits are payable under the policy if you are Disabled.  Page 11 of the Schedule of Insurance states:

"Disabled means either Totally Disabled, Residually Disabled or Partially Disabled"

Totally Disabled
With respect to Class 2, Totally Disabled means that during the Elimination Period and for the next 24 months, you are prevented by Disability from doing all the material and substantial duties of your own occupation.

After that, and for as long as you remain Disabled, you are prevented by Disability from doing any occupation or work for which you are qualified by training, education, or experience."

"Partially Disabled (Applicable to Class 2 only)
Partially Disabled means that you are prevented by Disability from doing all the material and substantial duties of your own occupation on a full-time basis, except that:
    (1) you are performing at least one of the material duties of your own occupation on

Benefit Management Services
Atlanta Disability Claim Office
P.O. Box 1811
Alpharetta, GA 30023-1811
Facsimile (770) 360-9845

Page 2
Lucey, Marilyn
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

      (2) either a full-time or part-time basis;
      (2) you are under the continuous care of a Physician, and
      (3) you are currently earning at least 20% less per month than your Pre-disability
          Earnings due to the same injury or sickness that caused the disability."

Page 14 of the Schedule of Insurance states:

      "The Hartford will cease benefit payment on the first to occur of:
        1)  the date you are no longer Disabled;
        2)  the date you fail to furnish proof that you are continuously Disabled;
        3)  the date you refuse to be examined, if the Hartford requires an examination;
        4)  the date you die; or
        5)  the date determined from the table below. " (described on page 14 of your
           Certificate of Insurance)
        6)  the date your Current Monthly Earnings exceed 80% of your Pre-disability
           earnings."

We based our decision to terminate your claim for benefits on Policy language and all of the documents contained in your claim file, viewed as a whole, including the following specific information:

1.  Employee's Statement on the Application for Long Term Disability Benefits signed by you on 6/13/90;
2.  Employer's Statement on the Application for Long Term Disability Benefits signed by your employer's representative;
3.  Attending Physician's Statement signed by Dr. Myron Falchuk on 6/8/90;
4.  Letter from Dr. Falchuk dated 7/19/90;
5.  Medical records from the New England Deaconess Hospital for dated of confinement 4/2/90 – 4/5/90 and 4/12/90 – 4/30/90;
6.  Letters from Dr. John Schuler dated 7/27/90 and 2/15/91;
7.  Attending Physician's Statement signed by Dr. Schuler on 5/31/91;
8.  Surveillance videotape and reports for the dates 5/30/02, 7/24/02, and 7/25/02;
9.  Claimant Interview taken on 9/4/01;
10. Claim discussion on 9/13/02;
11. Letter to Dr. Falchuk dated 9/13/02;
12. Letter from Dr. Falchuk dated 10/3/02;
13. File review by The Hartford's Medical Clinical Case Manager dated 10/4/02;
14. Independent file review completed by the Medical Advisory Group, LLC dated 10/24/02;
15. Letter from MAG physician to Dr. Falchuk dated 10/25/02; and
16. Employability Analysis Report completed by the Hartford's Rehabilitation Clinical Case Manager dated 11/4/02.

Page 3
Lucey, Marilyn
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

You became disabled on 3/28/90 due to Crohn's Disease. Long-term disability benefits became payable on 6/28/90 as you met the policy's definition of disability.  As such, the definition of Disability that applies to you changed on 6/28/92. As of 6/28/92, you must be disabled from performing the essential duties of any occupation for which you are qualified by education, training, or experience.

A part of our claims investigation includes activity checks which took place on 5/30/02, 7/24/02, and 7/25/02. During these periods, you were observed carrying your small child, loading him into your vehicle, driving your vehicle to a day-care center, unloading your children, carrying your small child into the day-care center and exiting shortly later, driving to and entering a US Post Office, and driving to and entering a Cumberland Farms Store. During these periods, you did not appear to be in any distress nor did you exhibit and difficulty with your actions.

On 9/4/02, you met with one of our representatives.  During that time, you made the following comments about your condition:

- You have to really watch what you eat and your diet consists of pretty bland items.  The flare-ups you experience are related to stress, diet and sleep.  You experience the nocturnal diarrhea about 5 times per week.  You really don't have the energy to do any type of exercising

- You do not use a cane/brace/walker or other special equipment to ambulate.

- You do not have any medical procedures planned or scheduled.

- Your condition has deteriorated due to the nocturnal diarrhea and you are not always able to make it to the bathroom in time.

- Walking/ walking style: No limitations.

- Sitting: No limitations unless you get a flare-up of hemorrhoids which occur about once per month.

- Standing: Along with the diarrhea there is a lot of cramping so my abdomen gets distended and it becomes uncomfortable to stand. As long as you don't have the cramping then you have no limitations standing.

- Lifting: You have no real limitations lifting and are able to lift your youngest son who is about 25 pounds.  You try not and lift anything too heavy, but you can lift the normal everyday type things to accomplish your daily activities.

Page 4
Lucey, Marilyn
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

- Bending at the waist: No limitations.  It becomes a problem when you am cramping or your stomach is distended.

- Twisting at the waist: No limitations. You can twist at the waist but think that it sets things off when you have to twist and turn.

- Pushing and pulling: You can push and pull the everyday items to take care of your daily needs. When pushing or pulling a grocery cart, you find that the more items you put in, the heavier it gets, and that sets your diarrhea off.

- Reaching: No limitations.  You can reach in all directions, but if you have to reach really high and stretch, that will set things off.

- Kneeling: No limitations.

- Squatting: No limitation due to the your condition.

- Stairs: No limitations. You are able to climb up and down a flight of stairs.

- Balance: No limitations.

- Use of hands: No limitations.

- Vision: No limitations.

- Hearing: No limitations.

- Speech: No limitations.

- Reading: No limitations.

- Concentration: If you are having a bad day, and have been up all night, you are exhausted. It then becomes hard to concentrate and stay focused on things.  You do not have any memory type problems of any kind.

- Sleep/Fatigue/Insomnia: You have difficulty sleeping at night due to the nocturnal diarrhea. You will get about 3-7 hours of sleep per night.  Last night you got about 3 hours of sleep because you were stressed out about this interview.  The stress then brings about the diarrhea and cramping.

Page 5
Lucey, Marilyn
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

- Computer skills: You have basic computer skills and have a home computer.

- Driving: You generally don't drive too far. You can drive short distances to run errands and make appointments. You used to drive your oldest son to Nursery School for a couple of years, but now he is going to kindergarten. Your normal amount of driving is within a ten-mile radius. You are able to drive on a daily basis.

- Getting in and out of a vehicle: No limitations but the twisting and turn may send you to the bathroom.

- Activities around the house: You do what you can, but your husband helps out many times. You are really responsible for the housekeeping and household chores and are able to vacuum, sweep, dust, cook, dishes and laundry. You also supervise your two sons, age 5 years & 18 months. You will also sew a little when you have the energy to do it. You also do the bills and handle the household finances.

- You took a flower arranging class at the local middle school last September and it went until December 2001, but were not able to make all the classes and would also show up late.

- You graduated High School in 1979 and then attended Katherine Gibbs, a secretarial program, in Boston, MA. It was a one-year program.

- You experience a pain level of "4" on an average day, a pain level of "1" on a good day, and a pain level of "9" on a bad day.

A review of your current medical records, surveillance reports and interview indicated there was no evidence of significant health problems secondary to Crohn's disease. In order to clarify your current status, a letter was written and sent to Dr. Falchuk along with the surveillance video, associated reports and claimant interview. Dr. Falchuk was asked to comment on the following restrictions and limitations associated with full-time work.

"She has access to rest room facilities as needed. "No sitting longer than 1-2 hours without the ability to change positions or get up and stretch. Walking and standing on an occasional basis. No lifting/pushing/pulling/carrying greater than 10 lbs. No repetitive bending, stooping, kneeling, twisting, crawling or reaching overhead. She has the ability to perform repetitive fingering, feeling, and handling such as typing at waist level with her arms resting on a table or the arms of a chair."

Dr. Falchuk sent a letter dated 10/3/02 noting that although you were able to sit and type, your unpredictable diarrhea would be "a major disability in the public work arena".

Page 6
Lucey, Marilyn
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

On 10/4/02, your file was reviewed by The Hartford's Medical Clinical Case Manager. Although Dr. Falchuk noted that your sleep and activities of daily living are disrupted by your chronic diarrhea, the office notes and videotape of your activities indicate you are active with your children. Your weight has been noted as being stable and Dr. Falchuk noted you are able to control your colic by eating six small meals with your medications being adjusted to help maintain control. Your last flare-up was noted as being during the summer of 2001. The Medical Clinical Case Manager recommended referring your file to the Medical Advisory Group, LLC for an independent review and clarification of whether the chronic diarrhea and incontinence were causing physical impairment of such severity to prevent full-time, sedentary work activity.

The review by the Medical Advisory Group, LLC (MAG) was received on 10/24/02. The MAG physician reviewed your entire claim file. On 10/24/02, the MAG physician had a telephone conversation with Dr. Falchuk. Dr. Falchuk agreed that you possess the ability to perform full time sedentary work, however your condition would cause some inconvenience in the workplace. Dr. Falchuk agreed that your weight had stabilized in recent years and your primary complaint was that of having 10-15 bowel movements per day with occasional fecal incontinence. He felt your having access to a bathroom and use of adult diapers with flexibility to leave your desk immediately would provide you with the capacity to perform sedentary employment. Dr. Falchuk volunteered that an ideal setting would be for you to work out of your home, but he agreed that you could work in a typical setting as long as you had access to restroom facilities as needed.

Your file was referred to The Hartford's Rehabilitation Clinical Case Manager for an Employability Analysis Report (EAR). Your educational and work history as an administrative assistant as well as you restroom access needs were considered in the completion of the report. The results of EAR show that you possess the transferable skills to engage in the following occupations: Membership Secretary- nonprofit organizations, School secretary- educational, Rehabilitation clerk- nonprofit organizations, Benefits clerk II- clerical, and Expediter, clerical.

In summary, the video surveillance shows you driving, ambulating, lifting your small child, and repeatedly getting in and out of a vehicle. At no time did you appear to be in any distress, nor did you exhibit any difficulties performing these activities. An independent medical review noted your condition was stable. During that review the physician discussed your case with Dr. Falchuk, your treating physician, and he agreed that you possessthe capacity for full time employment. The restrictions and limitations agreed to by Dr. Falchuk enabled our vocational rehabilitation department to determine you possess the transferable skills to engage in numerous occupations. The Policy provides that Hartford would pay benefits only if you remain Totally Disabled. The weight of the evidence in the claim file supports that you are capable of full time sedentary employment. As such, you no longer meet the policy's definition of being Totally Disabled and benefits beyond 10/31/02 are not payable.

Page 7
Lucey, Marilyn
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

The Employee Retirement Income Security Act of 1974 ("ERISA") gives you the right to appeal our decision and receive a full and fair review. You may appeal our decision even if you do not have new information to send to us. You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to your claim. If you do not agree with our denial, in whole or in part, and you wish to appeal our decision, you or your authorized representative must write to us within one hundred eighty (180) days from the date of this letter. Your appeal letter should be signed, dated and clearly state your position. Along with your appeal letter, you may submit written comments, documents, records and other information related to your claim.

Please send your appeal letter to:

>       Disability Claim Appeal Unit
>       Benefit Management Services - Floor B2-E
>       Hartford Life Insurance Company
>       P.O. Box 2999
>       Hartford, CT  06104-2999

Once we receive your appeal, we will again review your entire claim, including any information previously submitted and any additional information received with your appeal. Upon completion of this review, we will advise you of our determination. After your appeal, and if we again deny your claim, you then have the right to bring a civil action under Section 502(a) of ERISA.

If you have any questions, please feel free to contact our office at 800-445-9057. Our office hours are 8:00 AM to 4:00 PM from Monday through Friday.

Sincerely,


Michael Masztal, Investigative Analyst
Hartofrd Life and Accident Insurance Company

EXHIBIT 3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARILYN LUCEY,<br><br>    Plaintiff,<br><br>v.<br><br>HARTFORD LIFE and ACCIDENT INSURANCE COMPANY,<br><br>    Defendant. | )<br>)<br>)<br>)<br>) 04-CV-10800-NG<br>)<br>)<br>)<br>)<br>) |

AFFIDAVIT OF THEODORE F. GLOCKNER, ESQ. IN SUPPORT OF
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO DEFINE THE
<u>PROPER SCOPE OF THE RECORD FOR JUDICIAL REVIEW</u>

Now comes Theodore F. Glockner, Esq., and under oath does hereby state and
depose:

1.  I am Co Counsel to Defendant Hartford Life & Accident Insurance Company
("Hartford") in the above entitled matter.

2.  Exhibit 2 to Hartford's Opposition to Plaintiff's Motion to Define the Proper
Scope of the Record for Judicial Review ("Hartford's Opposition") is a true and
exact copy of a letter sent from Hartford to Plaintiff on November 11, 2002. That
letter was contained in the claim file received by this office and subsequently
produced by Hartford to Plaintiff on November 16, 2004 as part of the proposed
Record for Judicial Review. Plaintiff's Counsel has raised no objection as to the
authenticity of this correspondence since Hartford served it on her on November
16, 2004.

3.  Exhibit 4 to Hartford's Opposition is a true and exact copy of Hartford's February
4, 2003, letter to Plaintiff's Counsel. That letter was contained in the claim file

received by this office and subsequently produced by Hartford to Plaintiff on November 16, 2004 as part of proposed Record for Judicial Review . Plaintiff's Counsel has raised no objection as to the authenticity of this correspondence since Hartford served it on her on November 16, 2004.

4.     Exhibit 5 to Hartford's Opposition is a true and exact copy of Hartford's May 13, 2003, letter to Plaintiff's Counsel.  That letter was contained in the claim file received by this office and subsequently produced by Hartford to Plaintiff on November 16, 2004 as part of the proposed Record for Judicial Review. Plaintiff's Counsel has raised no objection as to the authenticity of this correspondence since Hartford served it on her on November 16, 2004.

Signed under the pains and penalties of perjury, this 27th day of December, 2004.

# EXHIBIT 4



THE
HARTFORD

February 4, 2002

Denise Chicoine
Englander & Chicoine, PC
Two Newton Place
Suite 200
Newton, MA 02458-1694

RE:    Trustees of Massachusetts Bankers, Assoc. Group Ins.
       Marilyn Lucy
       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

Dear Ms. Chicoine:

We have received your letter indicating that your client is appealing the decision that was made on her claim for Long Term Disability (LTD) benefits.

Your letter states that additional information will be submitted in connection with the appeal. Please send that information to the following address:

    Disability Claim Appeal Unit
    Benefit Management Services – Floor B2-E
    Hartford Life Insurance Company
    P.O. Box 2999
    Hartford, CT 06104-2999

We will not begin the evaluation of your appeal until the additional information is received. If you decide not to submit the information, please notify us and we will begin the evaluation.

Please note that your complete appeal must be submitted to us within 180 days of the date of our claim decision. If we do not receive additional information by that time, we will evaluate your appeal using the information currently in our file.

Appeal Unit
Benefit Management Services

200 Hopmeadow Street
Simsbury, CT 06089
Telephone 860 525 8555

Mailing Address: P.O. Box 2999
Hartford, CT 06104-2999

EXHIBIT 5



THE
HARTFORD

May 13, 2003

Denise Chicoine
Englander & Chicoine, PC
Two Newton Place
Suite 200
Newton, MA  02458-1694

RE:     Trustees of Massachusetts Bankers, Assoc. Group Inc.
         Marilyn Lucy
         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

Dear Ms. Chicoine:

We will begin the appeal process to your client's claim for Long Term Disability benefits.
Corey Welch, Appeal Specialist will review the claim file and all documents relevant to
it.

Under the federal law known as the Employee Retirement Income Security Act of 1974
(ERISA) we have 45 days to make an appeal decision.  If there are special circumstances
that prevent us from making the decision in that time a second 45 day decision period can
be used.  We will make our decision as soon as possible and will notify you if there is a
delay that prevents us from completing our evaluation in the first 45 days.

We will be glad to answer any question you may have.  **We can be reached at 1 (800)
445-9057 ext 64253.**

Appeal Unit
Benefit Management Services

200 Hopmeadow Street
Simsbury, CT 06089
Telephone 860 525 8555

Mailing Address: P.O. Box 2999
Hartford, CT 06104-2999

# EXHIBIT 6

## Medical Records Information

Board of Registration in Medicine regulations allow patients to obtain copies of their medical records and limit what a physician can charge for these copies. These regulations apply to private physicians' solo and group practices only. *They do not apply to records maintained by hospitals.* The Department of Public Health has jurisdiction over medical records at hospitals.

### Board Regulations
### *Maintenance of Medical Records*
Massachusetts Law 243 CMR 2.07 (13) (a), requires that a physician maintain medical records for seven years from the date of last patient contact or until the patient is nine years old, if longer than seven years.

- A retiring physician, his/her successor, or the estate of a deceased physician must maintain a patient's record under this regulation.
- After seven years, physicians can give former patients their original medical records or destroy them. There is no requirement that the physician notify patients before destroying the records. Therefore, it is wise to request a copy of your medical record when changing physicians.
- A patient is entitled to receive a copy of his or her medical record, not the original. Most patients assume that the record belongs to them since the medical record concerns them. The Board requires that a physician maintain the original to ensure that the patient's medical history is available to assist any subsequent health care provider treating the patient. To that end, the record should be legible and understandable to another health care provider.

### *Who Can Obtain a Copy and How Long Should it Take*
243 CMR 2.07 (13) (b) requires a physician to provide copies of a medical record in a timely manner to the patient or patient's representative. The copies may be for the patient, another licensee or other specifically authorized person, i.e., an attorney, insurance company or family member.

- If a physician's record includes records of the patient's former physician(s), the entire record should be copied.
- A patient's medical record cannot be released to a spouse, family member, attorney or any other person without the patient's express authorization, except when directed by a written court order or if the patient is a minor. If a patient is deceased, the duly appointed executor or administrator of the estate may obtain copies of the medical record.

- The regulation requires records to be provided in a timely manner. Usually two to three weeks is considered reasonable. If a physician leaves a practice, it can take much longer, as hundreds or thousands of records can be involved. In a medical emergency, records should be provided as soon as possible.

### Copying Cost

The Board regulation which pertains to charges for providing copies of medical records, 243 CMR 2.07 (13) (c), allows a fee of $0.25 per page for copies of the medical record and $20.00 per hour for clerical time necessary to provide the copies of the medical record. Charges for copies of x-rays and similar documents not reproducible by ordinary photocopying shall be at the physician's actual cost, plus reasonable clerical fees not in excess of $20.00 per hour.

- Physicians may **not** refuse to release a copy of your medical record if you owe money for medical services. They may, however, hold the copy until you pay the cost to reproduce the record.
- A flat fee for a copy of a medical record is acceptable only if the prorated, page by page charge for the record exceeds the flat fee. You should ask the physician how many pages are in your medical record, multiply the number of pages by $0.25 and add an estimated amount for clerical time. If, *after receiving the information from the physician*, you believe that the Board's regulations are not being followed, you may file a complaint against the physician.

### Psychiatric Records

The Board regulation which pertains to providing copies of medical records relating to mental health, 243 CMR 2.07 (13) (e), allows a physician to provide a summary of the record instead of a copy if the physician believes that the information contained in the medical record would be harmful to the patient's well being. However, a copy of the entire psychiatric record must be provided to another psychotherapist or the patient's attorney, at the patient's request.

### Medical Reports

Patients may contract with a physician to write a report regarding a medical condition. These reports usually relate to a lawsuit or Worker's Compensation claim. The Board does **not** have jurisdiction over medical reports. You should negotiate with a physician to set the price of the report in advance or take a copy of your records to another physician if you believe the price is too high or if your physician will not write the report.

**Medical Evaluations**

In circumstances when an insurance company or employer sends an insured or employee for an examination, the Board's medical records regulations do not apply as this falls outside the traditional patient-physician relationship. You should contact your employer or insurance company to obtain a copy of a report or records pertaining to an evaluation. M.G.L. Chapter 149, Section 19A, states that any employer requiring a physical examination of an employee shall, upon request, provide a copy of the medical report to the employee following the examination.

**General Advice**

Consumers often must change physicians when their health insurance company changes. The Consumer Protection Unit recommends that you request that a copy of your records be sent to you, rather than your new physician, so that you may keep a copy for your records and make a copy for any new physician. This saves time and money as you can copy the record more cheaply and no wait is required.

Parents should also keep copies of their children's immunization records. When they enter school or college years later, the children's records may no longer exist. Without the records, the children will have to be re-immunized.

*How to Request a Copy of Your Medical Record*
In order to investigate a complaint alleging failure to provide a copy of medical records, the Board requires proof that a copy has been requested in writing.

- Send a written request to the physician and keep a copy of the letter for your records. Include your name, date of birth, treatment period and address where you want the records sent. You should send the letter by certified mail, return receipt requested. You will receive a green postcard back from the Post Office which confirms that your request was received.
- If your letter is returned as unclaimed, call the physician's office to see if the letter was not claimed in error. Remember to write down the time, date, person you spoke with and any message. If the office is closed or there is no response, fill out the Board's complaint form and attach copies of your letter and the unclaimed envelope.
- If your letter was received and you do not receive a copy of your medical record within three weeks, fill out the Board's complaint form and attach a **copy** of your letter to the physician and a **copy** of the green postcard.

**Disclaimer**

The preceding information is an interpretation of the Board's regulations and advice given by the Consumer Protection Unit. The information is provided for the benefit of consumers and is subject to change. You may refer to the Board's regulations, 243 CMR 1.0, for more information.

You may purchase a copy of the Board's regulations, 243 CMR 1.0, from the State House Bookstore by sending a check or money order for $6.15 (made payable to the Commonwealth of Massachusetts), along with $2.60 postage affixed to a self-addressed 9" x 12" envelope to the State House Book Store, State House, Room 116, Boston, MA 02133. You may also find this information in law libraries and some town libraries.

10/15/98